Thank you, Your Honor. Good morning. May it please the Court, my name is Sean Gamble. This is Ken Friedman. We represent Mr. Singh. The primary and dispositive issue for this Court's resolution relates to the procedural and substantive unconscionability of the Rockwell arbitration agreement. A demonstrable bias inherent in the forced arbitration context for employee plaintiffs, which this Court has already noted in its decision in Ingle as weighing in favor of finding unconscionability. A third issue for the Court's consideration relates to this arbitrator's manifest disregard of the law, which at least illustrates how the arbitration bias may occur in practice. This issue need not be decided if the Court finds that the Rockwell arbitration agreement is unconscionable. The parties agree that the Washington law of unconscionability applies, as well as this Court's jurisprudence with respect to the Federal Arbitration Act and that the standard of review is de novo. But Rockwell also claims that the United Nation's Convention on the Enforcement and Recognition of Foreign Arbitral Awards also applies and somehow limits the rights of an American citizen such as Mr. Singh. The UN Convention does not apply. Let's assume that the UN Convention doesn't apply. Just speaking for myself, I agree with that. It just seems completely irrelevant. But that doesn't mean necessarily that you prevail because you still have to show affirmatively that there's been some problem to overcome the presumptions of regularity and so on and so forth. Those presumptions have been overcome. Under this Court's decision in Al Saifen, the Rockwell arbitration agreement is substantively unconscionable. And under the Court's reasoning in its decision in Mantour, the Rockwell arbitration agreement is procedurally unconscionable. What is procedurally unconscionable? Under Washington law, in the Zuber decision, this arbitration... I'm asking you to show me in the arbitration clause itself, the ER 49 and 50, what specifically is wrong with it? With respect to the procedural unconscionability, that relates to the manner in which Rockwell required Mr. Singh to sign the contract. Okay. It was a contract of adhesion under Washington law. That is, it was a standard form printed contract that Rockwell presented on a take-it-or-leave-it basis. And there was no true equality of bargaining powers. That in and of itself is not enough to render it unconscionable, is it? Not in Washington, Your Honor. But the fact that the Rockwell arbitration agreement was an adhesion contract weighs in favor of finding procedural unconscionability in the Rockwell arbitration agreement. What else do you have? We also have surprise and coercion or oppression. In this case, Rockwell already employed Mr. Singh. Rockwell offered a position in Singapore, which Mr. Singh accepted. Later, Rockwell, through an HR manager, presented Mr. Singh with a stack of documents, one of which was an unexpected arbitration agreement. Is there evidence in the record that Mr. Singh was required to sign an arbitration agreement and that other employees were not required to sign arbitration agreements? At the time, Mr. Singh's understanding was that certain employees of the subsidiary were required to sign, but he was not aware of how many. He was the required to sign. But he was not single dad. I mean, he was not the only person in the company who was required to sign an arbitration agreement. There's no evidence that that was the case, Your Honor. The Rockwell manager, however, told Mr. Singh that he, quote, had no choice in this matter but to sign the arbitration agreement to stay employed with Rockwell. That was in late 1995. Is there a case that says being required to sign an arbitration agreement at the risk of losing your job constitutes procedural unconscionability? Yes, Your Honor. In fact, this is more procedurally unconscionable than this Court's decision in Mantour where the employee was told he had little choice but to sign. And in that case, the employer offered a putative right to opt out of the arbitration program. Here, there was no right to opt out, and Mr. Singh was told he had no choice. So you say Mantour supports your argument that being told to sign an arbitration agreement or risk your job is procedural unconscionability? Mantour supports that argument? Yes, Your Honor. This case is more procedurally unconscionable than the Mantour case. In 1996 and 2000, Rockwell required Mr. Singh to sign additional yet identical arbitration agreements. He was told that he had to sign and return them by a certain date. If Mr. Singh failed to sign... But the certain date was in the future enough to allow this very sophisticated person to examine it and think about it and understand what it meant and all of that, right? He was given time. It wasn't, sign this in the next 10 minutes. Well, as this Court noted in its decision in Ingle, the amount of time that an employee has to consider the terms of a contract becomes irrelevant when the employee is required to sign the contract. Well, it certainly relates to your claim of surprise. You know, I mean, it's one thing to say, hurry up, sign all this, and then you say, oh my goodness, look what I signed on page 11 here. There was plenty of time to look it over. Well, there was a time certain that he had to return the agreement by. In addition, if Mr. Singh failed to sign, Rockwell would terminate compensation that Rockwell had already granted to Mr. Singh during the previous calendar year, supporting coercion in that case. As far as the subsequent agreements, if Mr. Singh would have forfeited the compensation that he'd already been granted by refusing to sign, he nevertheless would have been rebound purportedly by the 1995 agreement, wherein the HR manager gave the paper to him and told him that he had no choice but to sign that. But in Zuber, wasn't there a similar circumstance where a person was told that the arbitration agreement had to be signed as a condition of employment? Zuber's not as bad, Your Honor. Zuber wasn't as procedurally unconscionable. Here's why. The Zuber arbitration agreement was conspicuous, there was no surprise, and it was part of the job application. The Zuber plaintiff didn't have a job at the time that that was presented to them. Well, this was certainly conspicuous. It's a separate document. The print's not small. It's pretty clear what it is. I guess I'm not sure I understand your argument that it's inconspicuous. Well, my argument is that the Zuber agreement was conspicuous and part of the job application itself, whereas Mr. Singh had already negotiated the agreement for the Singapore position. Well, that's different than saying it's inconspicuous. That's saying it's separate and afterwards, but that's not the same as being inconspicuous. Yes, Your Honor. In late 1995, Mr. Singh was sat down by the HR manager and given a pile of documents. Among them was an unexpected arbitration agreement. I thought we were looking at the one on ER 49 and 50 that's signed in 2000. Is that the operative one? It's the operative one now, Your Honor. However, if he had not signed those, he still would have been bound purportedly by the 1995 agreement where he was told he had not signed them. That's not a, that's, well, okay. I guess I just don't understand why that's relevant in view of the 2000 agreement that's been signed here. It's relevant for the test under Zuber, Your Honor, as to whether the employee had a meaningful choice. Not a meaningful choice. Rather not any. 2000, didn't he? He was required to sign the arbitration agreement or else forfeit compensation that Rockwell. That doesn't have anything to do with 1995. I heard that part of your argument, but I'm like Judge Graber, now confused about how 95 plays into it. The point being that if Mr. Singh had resisted the coercive clause that said he would forfeit compensation, he nevertheless would have been purportedly bound by the 1995. Yeah, but then we'd be here arguing over 95 because that's the only one he ever signed on to and whether or not it, Okay. Which was as coercive because he was told he had no choice. Okay. Can I, now that I've got the right case, to ask the question, you make this interesting allegation that the AAA arbitration process is completely biased against the employees and so taking that without, you know, there's a foundational issue I have, but I'm just curious. In this case, it's my understanding that they went through the process under AAA of getting a list of potential arbitrators and I can't remember where in the process they settled on an arbitrator or, it was a three panel or one? It was a one. So they went through and Mr. Singh had a shot at, you know, rejecting first list, second list, and then there's this strike off, alternating strike off until they get down to a mutually agreeable. So in the selection of the arbitrator in this case, are you saying that the entire pool was biased against employees? That's what the sociological data shows, that there is a statistical bias against employee plaintiffs in the forced arbitration context. So basically what you're saying that in all employment arbitration, so at least, and does that apply only to the AAA or to all arbitration in employer-employee agreements? The sociological data published last year, which supports the observations made by legal scholars over the past 10 or 15 years, is that in the forced arbitration context for employee plaintiffs, there's a demonstrable statistical bias against employee plaintiffs. It's not limited to the AAA. You're saying that no matter what the organization is, if it's a forced arbitration between employer-employee, this study impeaches the impartiality of all potential arbitrators, whether or not Mr. Singh went through a process that gave him a chance to strike part of the pool. According to the legal commentators, Your Honor, although specifically... The second answer, yes or no, is I want to know about not what the legal commentators have said. I want to know what your claim is in this case. That the forum is biased against employee plaintiffs. I want to understand your position a little bit with respect to these statistical analyses. Do those analyses, the ones on which you rely, equate success by employers in arbitration with bias against employees in arbitration? In other words, is it purely looking at the results without considering the merits, potentially, of the actual arbitration claims? The assumption is the merits of the claims, whether they're in litigation or arbitration, are equal. The observation, then, is that the results for employee plaintiffs in arbitration are significantly worse than they would be in litigation, especially when there's a repeat arbitrator-employer pairing. When a plaintiff employee is offered compensation, when he is vindicated, at least somewhat, on his rights, the awards are even less than they would have been in litigation. Thank you. We've eaten a lot of your time, and you probably want to save some for... This last point, yes, Your Honor. The last point is an interesting academic issue that does, however, have real-world implications. At a minimum, it's relevant to a finding of unconscionability, in this case, if I may just reserve the remainder of my time for rebuttal. Certainly. We'll hear from Ms. Morissette. Good morning, Your Honors. My name is Catherine Morissette, and I represent Rockwell Automation, Inc. and Baldor Electric Company. It appears the Court would like to talk about unconscionability under state law, so I'd like to address a couple of the points that my colleague brought up. The case everybody was looking for this morning, I believe, is the Adler case out of Washington, which found decline to hold that procedure unconscionability was enough to set aside an agreement under Washington law. Council makes arguments that are... Adler said it was, or... Adler, a 2004 case out of the Washington Supreme Court. The Court held that substantive unconscionability was enough, but specifically declined to find whether procedure unconscionability... Well, yes, so it's undecided, not decided adversely. Correct, Your Honor. The difficulty with Council's arguments is that he has no evidence regarding the 2000 agreement being a contract of adhesion. All we know from the record is that he'd lived with an agreement for four years, that he signed it while he was working in Singapore, and then he had a period of months, presumably, to look it over. There is no evidence in the record that shows that the 2000 agreement was presented to him as a take-it-or-leave-it contract. And there is just no evidence that it was... He lacked meaningful choice. There's no evidence as to who drafted it. There's no evidence of negotiations. Mr. Singh didn't put any of that in before the District Court. Regarding substantive unconscionability, Mr. Singh attempts to make his agreement with Rockwell identical to the ones that this Court has struck down in the various Circuit City cases. As we pointed out in our brief, we do have a difficulty with his reliance on those cases. A lot of them applied California law, and I do think there are some differences here that need to be kept in mind, particularly when we talk about the fee-splitting provision. But those cases had seven points of grossly unconscionable provisions that favored the employer, none of which are present in the Rockwell agreement. One of them was that the only employee had to arbitrate. Counsel may tell you on rebuttal that the agreement to arbitrate wasn't mutual,  when you actually read the agreement itself. It said both the employer and the company agreed to arbitrate any and all claims arising from Mr. Singh's employment against each other. The agreement in Ingle didn't have that mutuality, and so there's nothing to show that this agreement was unilateral as Mr. Singh has put forth. Those agreements also limited remedies. For example, there was a limit to the amount of back pay and front pay somebody could get. That's not a misagreement at all. The class action prohibition we talked a little bit about this morning with Concepcion, that's changed a little bit. The Circuit City agreements also enforced a one-year statute of limitations. That's not present here. Circuit City had a unilateral right to modify the agreement. That's not in this agreement found at ER 49 either. The last thing was that there was an agreement that the parties needed to split costs and fees, and that's present in this agreement. Mr. Singh argued below that the fees should be paid by Rockwell in the first time out of the gate, then he changed his mind and argued that they should be struck from the agreement altogether. The arguments sort of moot here because AAA actually ordered Rockwell to pay off the costs of arbitration, so the fees splitting provision never came up at all. And I would posit that if the Court finds that particular provision unconscionable, Washington law in Zuber tells us it can just strike it. There's nothing here that shows that this agreement was so unconscionable that it permeates its formation or the terms of it such that we need to set aside the whole agreement and find that the parties shouldn't have gone to arbitration in the first place. Of course, while we've agreed that Washington law applies if we're going to look at state law principles in our briefing we brought up that we do think the International Convention applies and all of the four jurisdictional prerequisites were met there. For the first time ever on appeal and not until his reply brief Mr. Singh argues that the jurisdictional prerequisites aren't met by saying that because the agreement calls for arbitration in the U.S. that therefore there's some sort of exception. If you look at 9 U.S.C. 202 the jurisdictional prong that I think is relevant there is that it envisages performance abroad of the parties' relationship. It doesn't talk about looking at where the arbitration forum is the question is even if you have U.S. citizens if the parties' relationship is commercial and envisages performance abroad then that's one of the reasons why we moved to compel arbitration under the convention and asked the court to order it in South Carolina which he did and which we think was the right result. Mr. Singh's burden to set aside the award is also high. The court's asked about some novel arguments that he's put forth regarding systemic bias of arbitration as a whole. This of course isn't a grounds under the FAA for setting aside the agreement. Those are statutory and they're very limited. The one in his brief that he spends most of the time on is whether the arbitrator manifestly disregarded the law and granting summary judgment. The cases are clear that a manifest disregard of the law is something more than an error of factor law and that also this court cannot substitute its judgment for the arbitrator. The arbitrator who Mr. Singh did affirmatively agree to. If you read the arbitrator's order, it's clear he applied the Rule 56 standard which was specifically provided for in the parties' agreement in finding that Mr. Singh had not put forth evidence to support some of his claims. Much like he's done here in arguing that the agreement should be set aside, he failed to set forth evidence to support some of his claims there. Can you address the inherent bias issue? Apparently the AAA and these forced... Sure. I think the proper... I disagree that that's actually a relevant issue before the court. Whether it is or not, please address it. Well, the Supreme Court has found that arbitration agreements are valid in the employment context, going back to Circuit City v. Adams in 2001. And I think till that changes, the systemic bias argument doesn't have a place here. But if we disagree with you whether or not it has a place and we think it's relevant, what's your response to the argument that there is systemic bias? Well, first off, the statistics that he put forward had not even been published by the time he presented that evidence to the district court, so I think there's an evidentiary concern here with what he's put before the court. Whether they're even applicable, whether they've even been peer-tested, and whether they're even valid. Judge Graber asked some questions that, frankly, I don't know the answer to about whether the statistics that were examined in that study were just the amount of people who prevailed and people who didn't prevail, which, of course, what you need to look at is are the... some sort of idea about whether the claims that are being brought in the first place have validity or not. We don't know that from looking at the study. Second of all, the AAA does allow Mr. Singh to give input as to who's being chosen. If he had an argument regarding the pool and who was presented, even to the group, he had the availability to bring that up and have that addressed by the AAA. That doesn't answer the question about whether or not the statistics show that there's a systemic bias in the process. Well, that's certainly the author of the article's argument, and without myself examining the underlying data, I wouldn't be able to criticize that or not. In Mr. Singh's case, I don't think there's any evidence of systemic bias. And I think you have... When you say this report by Mr. Colvin, I guess it is, was not published at the time of the arguments in the district court? That's correct, and it was authenticated by Mr. Friedman. It wasn't authenticated by the author. Well, did you object to it? Yes, we moved to strike it. But the court took it. So was your objection that it had not yet been published or it hadn't been... Before you also, you could, in fact, have discovery on it and go after it like any expert report or the like? I mean, we objected under expert grounds. It hadn't been peer-reviewed, and also it was inauthentic in that Mr. Friedman authenticated it, not the author. And also there was a problem because Mr. Singh raised this after the briefing had closed for his motion to set aside. How did the district court rule on all of those? Judge Zille said that he felt that it didn't matter in light of the clear Supreme Court's precedent finding that arbitration agreements could be upheld in the employment context. So he didn't rule on your evidentiary objections? No, he didn't. The seven criteria, the seven grounds for setting aside the agreements under the Circuit City cases are not present here, and I'd like to maybe give a little bit more explanation about why that is. The mutuality of the arbitration agreement I explained  argument, saying that lack of interrogatories or requests for an arbitration agreement is not an issue. The arguments for admission also show a bias in favor of the employer. I think there's some language in Concepcion that tells us to be careful about whether we're going to hold that lack of discovery is something that could be found substantively unconscionable in the sense that it's an attack on the procedure of arbitration itself, and I think that's not a viable argument under Concepcion. Nevertheless, the agreement limited both the depositions and required that both parties could only exchange document requests, and it also had an exception that if you wanted more discovery, you could ask the arbitrator for it, which is in fact what happened here. Mr. Sain took over seven depositions of Rockwell's employees or agents. He was given thousands and thousands of documents. The court allowed him to have the additional discovery, and so that was made available to him. Unless the court has any additional questions, I'll... I don't believe that we do. Thank you. Thank you. Mr. Gamble, you have a little bit of time remaining. Thank you, Your Honor. The 2000 agreement was an adhesion contract under Washington law. It was a  Rockwell presented to Mr. Singh, and it was a standard form printed contract that Rockwell signed on a take-it-or-leave-it basis, and there was no true equality of bargaining power between the parties. Under Washington law, that is an adhesion contract. Furthermore, he was coerced into signing it because if he did not, he would have lost compensation that Rockwell had already granted to him in the previous calendar year. With respect to the substantive unconscionability of the Rockwell arbitration agreement, there are several provisions similar to those in this court's Circuit City cases that are substantively unconscionable, including the one-sided requirement to arbitrate. Oh, wait. I have to ask you about that. It's entitled a mutual agreement to arbitrate, and under consideration, it specifies that each party's promise to resolve its own claims by arbitration in accordance with this agreement rather than through the courts is the consideration for the other party's like promise. Why isn't that entirely two-sided? It's entirely one-sided when you look at the carve-outs, Your Honor. Mr. Singh is forced to arbitrate against the company directors, officers, employees, agents in their capacity as such or otherwise, subsidiaries, affiliates, so forth, roughly 14 categories of legal persons. In contrast, any That's because it's a corporation. Yes, Your Honor, but anybody within one of those categories of legal persons may sue Mr. Singh in court. Rockwell itself may sue Mr. Singh in court for unfair competition, disclosure of trade secrets, or disclosure of confidential information, conceivably the only claims that an employer would ever bring against Mr. Singh. It is one-sided. The benefits flow one way. Mr. Singh loses his rights while Rockwell reaps the benefits of forced arbitration while retaining the right to sue him in court. As this court noted in its Engle and Mantorg decisions, that is exceedingly one-sided. In fact, it's more one-sided than the Circuit City cases. You have exceeded your time, so if you could wrap up briefly, that would be great. Thank you, Your Honor. The discovery with respect to the discovery provision, only one is permitted. The seven that Rockwell referenced related to perpetuation depositions designed to preserve witness testimony for the hearing, which did not occur. Under this court's decision interpreting Washington law in La Saffine, the substantive unconscionability of the contract must be determined as the time the contract was made, not when this was enforced. Mr. Singh respectfully requests that this be found unenforceable. Thank you, counsel. The case just argued is submitted, and we appreciate both counsel's arguments. Now we will take a break for about ten minutes.
judges: Graber, Fisher, Rawlinson